**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN**

v.

**The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Debtor; William J. Kirk and Richard J. Smith, Trustees.**

Civ. No. 12796.

United States District Court
D. Connecticut.

Oct. 29, 1968.

Philip Hawley Smith, Buckley, Hilgendorff, Williams & Smith, Bridgeport, Conn., Thomas Shaw, Jr., Breed, Abbott & Morgan, New York City, for plaintiff.

John F. Bomster, New Haven, Conn., for defendants.

## RULING ON MOTION FOR TEMPORARY INJUNCTION

BLUMENFELD, District Judge.

### Jurisdiction

Jurisdiction is based upon 28 U.S.C. §§ 1331 (action arising under federal law) and 1337 (action arising under acts regulating interstate commerce).[1]

### Facts

The controversy in this case deals with wages paid to firemen employed on passenger train trips between New Haven and Boston, a distance of 157 miles. Defendant's trains make this trip 102 times per week each way. For many years before September 1, 1968, it was the practice to assign firemen to two consecutive passenger runs, the outbound and the return trip. For pay purposes the two legs of the round trip were treated as two separate trips; the firemen were paid the flat rate for the "basic day" of 100 miles, plus the excess mileage rate for the additional 57 miles, for one direction of the trip; they have then been assigned to the return trip and were paid in a similar manner.

Up until 1964 the flat rate and the mileage rates were the same—that is, the basic day was considered 100 miles and the excess mileage rate was $\frac{1}{100}$ of the basic day's pay per mile. Since that time, however, the rates have diverged, with the flat rate increasing more rapidly than the excess mileage rate. It thus became advantageous for the railroad to assign its trips to take advantage of this rate differential. Therefore, on August 28, 1968, defendant posted "Circular Notice No. 70" stating that effective September 1, 1968, crews operating on the runs in question would be paid on a turn around basis rather than on a one way basis. The effect of this is to provide payment at the basic day rate for 100 miles and the excess mileage rate for 214 miles; the saving to the railroad per fireman per round trip is $3.10. For its right to do this defendant relies on Article 2 of the Agreement of March 1, 1955, between plaintiff and defendant: "One hundred miles or less (*straight-away or turn around*) five hours or less, except as provided in Article 3, section (A) shall constitute a day's work, miles in excess of 100 will be paid for at the mileage rate provided, according to class of engine." (Emphasis added).

There is some evidence of communications between representatives of plaintiff and defendant about resolving the conflict, but these were to no avail. On September 16th defendant learned that the plaintiff was talking about a strike, and that same day defendant submitted

---

1. It is argued by defendant that if any court has jurisdiction over this controversy it is the court with jurisdiction of the reorganization of defendant under Section 77 of the Bankruptcy Act; attention is called to Order No. 1, In the Matter of The New York, New Haven and Hartford Railroad Company, Civil No. 30226 (D.Conn., July 7, 1961). However, the United States District Court for the District of Connecticut is the reorganization court; although this case has been assigned to Judge Anderson for all purposes, permission for the undersigned to hear and decide this matter has been granted.

the issue to the National Railroad Adjustment Board. On September 23rd plaintiff's members voted unanimously to strike over the issue. Plaintiff states, however, that it desires to avoid a strike, and instead only wishes to maintain the status quo until the railroad complies with the procedures of Sections 2 Seventh and 6 of the Railway Labor Act, which it claims are applicable. Plaintiff is willing to consent to an injunction against work stoppage pending exhaustion of Section 6 procedures.

## The Legal Issues

Title 45 U.S.C. § 152 Seventh, which is Section 2 Seventh of the Railway Labor Act, provides:

> "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

Title 45 U.S.C. § 156 (Section 6 of the Act) provides that carriers and employee representatives must give at least 30 days written notice of intended changes in agreements affecting rates of pay, rules, or working conditions. It provides for a conference, and reference to the National Mediation Board at the request of either party. Where such notice of intended change has been given or conferences are being held, or the services of the Board have been requested or have been proferred, the carrier shall not alter the rates of pay, rules, or working conditions unless the conference or Mediation Board proceedings have been exhausted. Plaintiff claims that these two sections are applicable to the present case.

Defendant claims that the relevant statute is 45 U.S.C. § 153 First (i) (Section 3 First of the Act), which provides:

> "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by the petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."

■■ It is well settled that Section 6 procedures govern "major disputes." *See, e.g.,* United Indust. Workers v. Board of Trustees, 351 F.2d 183 (5th Cir.1965); Southern Ry. Co. v. Brotherhood of Locomotive Firemen, 119 U.S. App.D.C. 91, 337 F.2d 127 (1964); Manning v. American Airlines, Inc., 329 F.2d 32 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964); Westchester Lodge 2186 v. Railway Express Agency, 329 F.2d 748 (2d Cir. 1964). On the other hand, "minor disputes" are governed by Section 3 of the Act, and in these disputes the jurisdiction of the National Railroad Adjustment Board is primary and exclusive, and courts may not hear them. *See, e. g.,* Brotherhood of Locomotive Engineers v. Louisville & N.R.R., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Pennsylvania R.R. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Order of Ry. Conductors v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811 (1950); Slocum v. Delaware, L. & W. R.R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950). Therefore, if the present dispute between plaintiff and defendant is "minor," this court is without jurisdiction.

■ The test of whether a dispute is "major" or "minor" has been set down by the Supreme Court in Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945):

> "The first [major disputes] relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an exist-

ing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. * * * In either case the claim is to rights accrued, not merely to have new ones created for the future." Id. at 723, 65 S.Ct. at 1290.

See also Rutland Ry. v. Brotherhood of Locomotive Engineers, 307 F.2d 21 (2d Cir.1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). In short, when the dispute is over the formation of a new term of agreement or alteration of a term of an existing agreement, the dispute is major and the parties must proceed under section 6 without changing the status quo; when the dispute is over the interpretation or application of terms of an existing agreement, the dispute is minor and section 3 applies, giving the Adjustment Board exclusive jurisdiction of the controversy.

Plaintiff claims that the change in the method of computing the undisputed rates of pay—from a one way basis to a turn around basis—is a change in the existing agreement on pay rates. Plaintiff also says that although there is no specific provision in the agreement specifying the one way basis of payment, that method has been the practice since 1908, and is in effect part of the agreement, that any change in this practice is a change in the agreement, and, therefore, is a major dispute. On the other hand, defendant points out that the rates of pay have not been changed— that the basic day's pay and the rate for excess mileage have not been changed. Rather, the method of computing what constitutes the basic day has been changed; this, claims defendant, is authorized by Article 2 of the Agreement of March 1, 1955, quoted at page 1045 supra. Whether the words emphasized in that quote justify defendant's actions obviously calls for the interpretation of an existing agreement; therefore, the dispute would seem to be minor.

Plaintiff argues that the long standing practice of payment on a one way basis forecloses defendant's interpretation of Article 2. However, Order of Ry. Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946), is analogous. In that case an agreement made in 1940 between the representative of road conductors and the railroad provided that only road conductors would work trains operating outside the railroad yards; but the practice was that on five trains operating within the yards, road conductors would also work, even though trains within the yard were normally operated by yard conductors, represented by the Brotherhood of Railroad Trainmen. Then in 1943 the latter union and the railroad agreed to substitute yard conductors for road conductors on those five trains. The Court held that Section 6 of the Act applied to changes of terms "embodied in agreements;" that this practice was not in the agreement between the road conductors and the railroad; and that, therefore, the dispute centered around an interpretation of the agreement and was minor, within the jurisdiction of the Adjustment Board. Nunn v. Missouri Pac. R.R., 248 F.Supp. 304 (E.D.Mo.1966), likewise holds that when a party relies on custom or usage rather than on a specific provision in the agreement, the issue becomes one of interpretation of the agreement, rather than a change in a term of that agreement.

Plaintiff cites several cases to support its arguments, but they are all distinguishable. United Indust. Workers v. Board of Trustees, supra, involved a carrier that ceased operating a grain elevator to which a collective bargaining agreement with the union applied. The

court held that it was a major dispute because ceasing business terminated the agreement—obviously a drastic change in the existing agreement.

Southern Ry. v. Brotherhood of Locomotive Firemen, *supra*, involved a carrier that issued a Section 6 notice because it desired to revise specific provisions in the agreement; the mediation under that section was already pending when the carrier unilaterally initiated changes in the agreement.

In Detroit & Toledo S.L. R.R. v. Brotherhood of Locomotive Firemen, 267 F.Supp. 572 (N.D.Ohio 1967), the carrier unilaterally changed the terminal point, where employees went on and off duty. By long standing practice the point had been at Lang Yard; this was not expressed in the agreement. However, the union had sought *amendment* of the agreement to specify Lang Yard as the sole termination point, and had thus invoked the services of the Mediation Board under Section 6, since this was to be an addition of a new term to the agreement. It was after this time that the carrier unilaterally changed the termination point. The court enjoined this change, stating "[W]*henever the services of the [National Mediation] Board have been invoked*, its jurisdiction should be protected by the application of the provisions of section 6 even if the particular condition is not fixed by the existing agreement." *Id.* at 576. (Emphasis added). In the case at hand there has been no resort to Section 6 procedures, presumably because neither party has sought to amend the agreement, as was the case in Detroit & Toledo, *supra*. Plaintiff cites Railroad Yardmasters of America v. Pennsylvania R.R., 224 F.2d 226 (3d Cir.1955), for the proposition that the union does not have to give Section 6 notice in order for the railroad to be enjoined from upsetting the status quo. But all that case held was that the railroad could be enjoined from giving effect to a new collective bargaining agreement not yet approved by the union, because it failed to comply with the Section 6 notice provision, required in such major disputes as was involved there, namely, the formation of a new agreement.

Shipley v. Pittsburgh & L.E. R.R., 83 F.Supp. 722 (W.D.Pa.1949), speaks of the background and practice that is presupposed when the parties enter into a contract. But rather than supporting plaintiff's argument that practices become terms of the agreement, the court throughout its lengthy opinion spoke of using practice as an aid to *interpreting* the agreement.

Plaintiff also relies upon Manning v. American Airlines, Inc., *supra*. That case involved a checkoff provision that was not embodied in the basic agreement; but it was a specific provision of an additional agreement, and as such could not be terminated even though the additional agreement had no automatic renewal clause. The court held that the existence or nonexistence of renewal provisions were irrelevant to the application of Section 6, not that practices that were not embodied in agreements could not be terminated without resort to Section 6 procedures.

■■ From the foregoing, it is clear that the present case involves a "minor dispute" and is subject to the exclusive jurisdiction of the National Railroad Adjustment Board. It is true that in Westchester Lodge 2186 v. Railway Express Agency, *supra*, the court said that a District Court could in its discretion issue an injunction in a minor dispute "to preserve the jurisdiction of the Adjustment Board." 329 F.2d at 753. There is a claim by plaintiff that defendant's precarious financial condition means that irreparable injury will result if an injunction is not granted; but it is also true that if the defendant goes out of business the claims for back wages due should the Adjustment Board decide in plaintiff's favor would receive high priority. The firemen involved may need the money they claim is due; but the railroad too has need of any assets it may rightfully gain by economy in its operation. The traditional concept of irreparable injury to the plaintiff is

not present. See Vars v. International Brotherhood of Boilermakers, 204 F. Supp. 241 (D.Conn.1962); Luckenbach S.S. Co. v. Norton, 21 F.Supp. 707 (E.D. Pa.1937).

Therefore, the plaintiff's application for an injunction is denied. Since the parties fully briefed and argued the point on which jurisdiction depends, no useful purpose would be served by postponing a ruling on the defendant's motion to dismiss until after it has been duly noticed and the same points reargued. It is obvious that the court is without jurisdiction. Accordingly, the case is dismissed for want of jurisdiction.