458 F.2d 354
 80 L.R.R.M. (BNA) 2127, 68 Lab.Cas. P 12,617
 UNITED TRANSPORTATION UNION, General Committee of
Adjustment, Enginemen, Burlington Northern, Inc.,
Formerly Northern Pacific Railway
Company, Appellee,
v.
BURLINGTON NORTHERN, INC., a Corporation, Appellant.
 No. 71-1382.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1972.
Decided April 13, 1972.
 
 Barry McGrath, Anthony Kane, James R. Walker, St. Paul, Minn., for appellant.
 Patrick J. Foley, Rerat, Crill, Foley & Boursier, Minneapolis, Minn., for appellee.
 Before MATTHES, Chief Judge, and LAY and ROSS, Circuit Judges.
 MATTHES, Chief Judge.
 
 
 1
 This action was provoked by the decision of Burlington Northern, Inc. [carrier] to alter the firemen assignments on dieselized engines on its Superior, Wisconsin-Minneapolis, Minnesota run to allow use of firemen only on turnaround service to comply with Wisconsin's full-crew-law. United Transportation Union [union] sought, inter alia, to enjoin this change in assignments. The district court, after hearing, granted a temporary injunction and the carrier appealed.
 
 
 2
 The factual antecedents of this case stem from the labor dispute beginning in 1959 when carriers nationwide sought to amend the National Diesel Agreement of 1950, which requires firemen on diesel and other non-fired engines. That dispute ultimately was resolved by compulsory arbitration imposed by Congress. Pub.Law 88-108, 77 Stat. 132. The Arbitration Board's award, called Award 282, 64-1 Arb. p 8179, provided a carrier could list those firemen assignments on a particular seniority list that it desired to abolish, and the union could then veto abolition of 10% of those listed. Depending upon their seniority, firemen occupying positions listed and not vetoed would either retain employment with wages assured, or be terminated with ample severance pay. In the parlance which has since attached, assignments listed and not vetoed were "blanked" if immediately abolished, or "blankable" if occupied by a protected fireman with the run terminable at will.
 
 
 3
 In decisions which neither party here contests, Brotherhood L. F. & E. v. Atchison, Topeka and Santa Fe Ry. Co., 143 U.S.App.D.C. 72, 442 F.2d 794 (1971); Brotherhood of Railroad Trainmen v. Akron & B. B. R. R. Co., 128 U.S.App.D.C. 59, 385 F.2d 581 (1967, 1968) cert. denied, Brotherhood of Locomotive Firemen and Enginemen v. Bangor and Aroostock R. Co., 390 U.S. 923, 88 S.Ct. 851, 852, 856, 19 L.Ed.2d 983 (1968), the D.C. Circuit determined what effect is to be ascribed to Award 282 now that its Congressionally-imposed two-year lifespan has expired. The court held that the procedures for blanking assignments expired with Award 282, so that for any "new runs" created after its expiration the National Diesel Agreement remained applicable and required assignment of firemen. However, because the Railway Labor Act perpetuates working conditions until changes are bargained pursuant to its procedures, the court held that those assignments blanked or blankable during the award continued to be abolished unless the parties subsequently contracted to the contrary, and the fact that a fireman with tenure protected by Award 282 continued to fill a blankable assignment did not necessitate its refilling when that fireman's employment ceased. As a caveat to this latter view, however, the court said the Supreme Court's view in Chicago Rock Island[1] that Award 282 did not preempt state full-crew laws meant that blanking an assignment in a full-crew state had no effect and did not, as the carriers contended, abolish that assignment with abolition suspended until repeal of the law.
 
 
 4
 The Superior to Minneapolis run here in question was made blankable (listed and not vetoed) pursuant to Award 282 and it is manned by a manpower pool based at Superior. All the firemen have job and wage security emanating from the Award; thus the crux of this controversy is whether the carrier will be required to hire additional firemen.
 
 
 5
 The dispute arose when, beginning in 1966 after the expiration of Award 282 and continuing since then, the carrier seasonally altered the assignment of firemen so that in slack seasons firemen traverse the entire Superior-Minneapolis run, but in heavy seasons they make only turnaround service between Superior and the border town of Sandstone, Minnesota. This provides a fireman in Wisconsin, a full-crew state, and frees other firemen for additional, heavy-season runs.
 
 
 6
 On October 6, 1970, the union filed this suit and the carrier filed a submission of the case with the National Railroad Adjustment Board [N.R.A.B.]. The union's complaint alleged in substance that these alterations constituted "new runs" not permitted by the Diesel Agreement as modified by Award 282, and that they therefore constituted a change in working conditions which can be accomplished only by bargaining pursuant to Sec. 6 of the Act. The carrier denied that the changes constituted a "new run".
 
 
 7
 The District Court, Judge Neville, issued the injunction "preserving the status quo" without the customary considerations of irreparable injury or adequacy of other remedies, a decision which only Sec. 6 of the Act would permit. However, despite this implicit characterization of the dispute as one governed by Sec. 6, he properly perceived the ultimate question to be whether the "new assignments" were permitted by the existing contract and, in accordance with the provisions of Sec. 3, deferred that question for expert decision by either the N.R.A.B. or a special adjustment board.[2]
 
 
 8
 Clearly, this hybrid approach cannot be sustained. The dispute is either a Sec. 3 minor dispute, or a Sec. 6 major dispute. The distinction between major and minor disputes is that minor disputes are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . .," 45 U.S.C. Sec. 153 First (i), while major disputes involve attempts to change the "rates of pay, rules, or working conditions. . . ." 45 U.S.C. Sec. 156. See, Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).
 
 
 9
 The importance of the major-minor distinction is in the respective procedures attendant to each type dispute.
 
 
 10
 "Section 3 of the Railway Labor Act confers jurisdiction on the National Railroad Adjustment Board to hold hearings, make findings, and enter awards in all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements . . .,"'
 
 
 11
 Slocum v. Delaware L. & W. R. R. Co., 339 U.S. 239, 240, 70 S.Ct. 577, 94 L.Ed. 795 (1950); and "the jurisdiction of the Board to adjust grievances and disputes of the [minor] type . . . is exclusive." Id., at 244, 70 S.Ct. at 580. Also, since "[a]n agency especially competent and specifically designated to deal with it has been created by Congress . . ., the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue;" and unless the union can "show irreparable loss and inadequacy of the legal remedy, [t]he court of equity should . . . stay its hand." Order of Ry. Conductors v. Pitney, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946) (citations omitted). Cf., Brotherhood of Loco. Engr's. v. Missouri-Kan.-Tex. R. R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960). If however, the dispute is major, Section 6 expressly prohibits changes pending collective bargaining and thus allows an injunction to preserve the status quo without consideration of equity.
 
 
 12
 It is clear, however, that the line between changes in working conditions which are or are not allowed by a contract is very thin and therefore any attempt by a court to make a definitive resolution of this question would tread upon the exclusive jurisdiction of the adjustment agencies. Accordingly, the test to be applied is that if the contract is reasonably susceptible to the interpretations sought by both the carrier and union, the dispute is minor and within exclusive adjustment jurisdiction, Order of Ry. Conductors v. Pitney, supra; United Indus. Workers Int'l Union v. Board of Trustees of Galveston Wharves, 351 F.2d 183, 188-189 (5th Cir. 1965), and the injunction can issue only upon an equitable showing of irreparable injury. Only if, as in Galveston Wharves, the contract were not reasonably susceptible to the carrier's contention[3] would this be a Sec. 6 dispute proper for a "status quo" injunction. It is in applying that test to situations where, as here, the contract has been altered by Award 282 that the "new runs" or "new assignments" concept comes into play. The question whether the contract arguably allows the change must be stated as whether these assignments arguably are variations of old assignments blanked under the Award or clearly are new assignments. While the adjustment board may determine the assignments here contested to be new ones, we cannot say they clearly are new. Rather they are at least arguably variations of old assignments. Accordingly, the suit as presently posited is governed by Sec. 3 and it was therefore essential that the District Court find irreparable injury resulting from the carrier's alterations before issuing the injunction. However, the irreparable injury issue was not considered by the court; at least it is not discussed in the court's memorandum opinion. Accordingly, we vacate the temporary injunction and remand the cause to the District Court for further proceedings consistent with this opinion. Upon remand, the court may in its discretion again continue the cause pending adjustment. However, the recent amendments to 45 U.S.C. Sec. 153 First (m) preclude it from litigating the question of damages. Northwest Airlines, Inc. v. Air Line Pilots' Assn., 373 F.2d 136 (8th Cir.) cert. denied, 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967).
 
 
 
 [1]
 Brotherhood of Loco. Eng'rs v. Chicago, Rock Island & Pac. R.R. Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966)
 
 
 [2]
 The cause was continued pending adjustment so the carrier could seek dissolution if it prevailed and the union could obtain a permanent injunction if it prevailed
 
 
 [3]
 We recognize that in Galveston Wharves Judge Brown said that in minor disputes a court has "jurisdiction only to mold equitable relief to preserve the status quo pending Adjustment Board decision." 351 F.2d at 188. We think, however, that in footnoting that phrase to Brotherhood of R.R. Trainmen v. Chicago River & I. R.R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957) and Missouri-Kan.-Tex., supra, he indicated he did not mean to imply that a union can have a carrier's changes enjoined without making an equitable showing. In any event, the Pitney decision by the Supreme Court quoted above is controlling on this issue