**UNITED TRANSPORTATION UNION et al., Plaintiffs,**

v.

**BURLINGTON NORTHERN, INC., a corporation, Defendant.**

**Civ. No. 5–74–48.**

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 6, 1974.

Patrick J. Foley, Rerat, Crill, Foley & Boursier, Minneapolis, Minn., for plaintiffs.

Barry McGrath and J. R. Walker, Burlington Northern Inc., St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

The complaint for injunctive relief in this case states that defendant railroad plans to transfer involuntarily four railroad firemen from the Duluth-Superior terminal to fill vacancies as hostlers in the Twin Cities. The plaintiffs, who are the collective bargaining representatives of the firemen, bring this motion for an injunction restraining such involuntary transfers.

It appears that the firemen included in the dispute were hired after the merger which created the defendant Burlington Northern Inc. but before the enactment of the Wisconsin statute lifting the requirement that a fireman serve on every train operating in the state. Wisconsin Statutes Annotated § 192.80. Defendant asserts that if it is not able to transfer these individuals, it will have to hire new people to fill the hostling vacancies. Defendant also contends that there is not enough work for all its firemen in the Duluth-Superior area, and that the applicable collective bargaining agreements permit them to transfer involuntarily excess firemen from the Twin Ports to the Twin Cities. The plaintiffs do not appear to dispute that there is an excess of firemen in one area and a shortage of hostlers in the other. It is their contention, however, that the individuals may not be transferred involuntarily because the Wisconsin statute, which repealed that state's full crew law, protects the rights of these individuals. In addition, the Unions contend that the proposed involuntary transfers constitute a major change in working conditions under Section 6 of the Railway Labor Act, 45 U.S.C. § 156 (1970), and requires the filing of a notice by the company and the preservation of the status quo until the Act's mediation procedures have been exhausted.

Passage of the Wisconsin law, which repealed the requirement that all trains operating in the state carry a full crew, including a fireman, carried with it the condition that "[n]o employe (sic) of a railroad operating in this state on the effective date of this section . . . shall be . . . transferred without his approval or reduced in rank or classification because of the repeal" of the full

crew laws. Wisconsin Statutes Annotated § 192.80. The Unions contend that this fully protects the individuals sought to be transferred, while Burlington Northern asserts that the act is inapplicable. It argues that the individuals were not "employees of a railroad" at the effective date of the Act because they were on extended furlough status or working in Minnesota at the time. In addition, the railroad asserts that the individuals are not being transferred "because of" the repeal of the full crew laws.

█ With regard to the propriety of an injunction at this time, these facts and arguments must be used to determine whether this dispute comes under Section 6 or Section 3 First (i) of the Railway Labor Act. 45 U.S.C. § 156 or § 153 First (i) (1970). Plaintiffs contend that the issue here is covered by Section 6. That section deals with the procedures for negotiating rates of pay, rules and working conditions. It has been construed to apply only to major disputes over issues not covered in the agreements between the parties. Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 722–724, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). By the terms of this section, the status quo must be maintained while negotiation procedures are followed. The Courts, consequently, have granted injunctions to preserve the status quo when Section 6 is involved, without inquiring as to the existence of the usual equitable grounds needed for such an injunction. Detroit and Toledo Shore Line R. Co. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). Despite the fact that neither party has filed the notice required before Section 6 becomes operative, plaintiffs seek an injunction based on its provisions.

Defendants, on the other hand, contend that Section 3 First (i) of the Railway Labor Act is applicable to this situation. Under this section, disputes which grow "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" must be referred to the statutorily established system of compulsory arbitration. 45 U.S.C. § 153 First (i) (1970). Such an arbitrating body, either the National Railroad Adjustment Board or a special board has been held to possess exclusive jurisdiction to hear disputes properly before them. Andrews v. Louisville & Nashville R.R., 406 U.S. 320, 325–326, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Since there is no status quo requirement with respect to grievances under this section, irreparable injury and an inadequate remedy at law must be shown by the plaintiff before an injunction can be granted with respect to conduct complained of under this section. Despite the fact that resolution of this dispute depends on the interpretation of the law of the State of Wisconsin, as well as the collective bargaining agreements between the parties, defendant contends that an injunction should be granted only upon an equitable showing.

A third possibility, raised and discussed briefly by both parties, is that this dispute may be properly before the compulsory arbitration boards of Section 3 First (i), but for the fact that a board's jurisdiction is limited to the interpretation of agreements between the parties. This case, however, involves the interpretation of a state statute in addition to the interpretation of collective bargaining agreements. Plaintiffs appear to take the position that under this view it would be proper for the Court to interpret the Wisconsin Full Crew Law Repealer, and thereby dispose of the bulk of the dispute. The railroad, on the other hand, takes the position that if all that is involved here is an interpretation of state law, there is no federal question in the matter and, absent the allegation of other grounds, the case must be dismissed for lack of federal jurisdiction.

█ The question of whether the major disputes provision, Section 6, applies here can be dealt with at the outset. The status quo provisions of that section apply only after one of the disputants

has filed the proper notice of an intended change or after a determination that such a notice is required. The union has given no such notice, and the defendant railroad holds the view that a Section 6 notice is not necessary because the transfers are authorized by existing collective bargaining agreements. The union, however, contends that there is no provision in the collective bargaining agreement between plaintiff and defendant "which provides for the change of crew consist as proposed by defendant." Points and Authorities at 2. Nevertheless, Article IV Section 3 of the Manning Agreement, entered into between the parties on July 19, 1972, appears to provide that junior qualified firemen, if available, may be required to transfer to a nearby location to fill a hostling service vacancy. Under these circumstances, it cannot be said that the defendant must proceed only in accordance with Section 6. Final determination of this issue, however, requires an interpretation of the collective bargaining agreement. Such an interpretation ought to be left to a tribunal, such as the Railroad Adjustment Board, which has the necessary expertise concerning railroad labor relations. *See* Brotherhood of Loc. Fire & Eng. v. New York, N.H. & H.R. Co., 296 F.Supp. 1044, 1047 (D.Conn. 1968).

■ In addition to this view of the issue, it is the rule of this Circuit that the test as to whether a matter is properly referable to the compulsory arbitration procedures of Section 3 First (i) or the mediation procedures of Section 6 is "if the contract is reasonably susceptible to the interpretations sought by both the carrier and the union, the dispute is minor and within exclusive adjustment jurisdiction . . . and the injunction can issue only upon an equitable showing of irreparable injury." United Transportation Union v. Burlington Northern Inc., 458 F.2d 354, 357 (8th Cir. 1972).

Under this test, if there was no substantial issue here concerning the interpretation of the Wisconsin Full Crew Law Repealer, this dispute would be one clearly within the province of the adjustment boards. The defendant contends that Article IV Section 3 applies to the individuals sought to be transferred, and that a proper interpretation of its terms authorizes their involuntary transfer. Plaintiffs, on the other hand, contend that according to the current collective bargaining agreement and the Wisconsin repealer of the full crew laws, any provision which may authorize the transfer of these individuals against their will is inapplicable to this situation. Because the contract and the Wisconsin law appear to be reasonably susceptible to both views, this is certainly a dispute over the "interpretation or application" of the agreements as outlined in Section 3 First (i).

■ The issue remains, however, as to the need to interpret a state law in determining whether the controversy has any effect on the jurisdiction of the adjustment boards or the Court. The Wisconsin Full Crew Law Repealer provides that the rights which it grants to railroad employees "shall be binding on the railroads and shall be part of and shall have the same force and effect as the collective bargaining agreements between the employe organizations and the railroads." Wisconsin Statutes Annotated § 192.80. Fortunately, this provision obviates the need to deal with the issue of the adjustment boards' jurisdiction, generally, to make binding interpretation of state statutes. In a similar situation involving a federal law, the United States Court of Appeals for the District of Columbia Circuit held that where Congress directed that a statute be treated as an agreement between the railway carriers and the unions, it was to be treated as an agreement under Section 3 First (i) of the Railway Labor Act. Consequently, the statute's interpretation was held to be a matter within the exclusive jurisdiction of the adjustment boards. International Brotherhood of Electrical Workers v. Washington Terminal Co., 154 U.S.App.D.C. 19, 473 F.2d 1156, 1172 (1972), *cert. den.* 411

U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 195 (1973).

The *Washington Terminal* case is similar to the one at hand. An important factor in the Court's ruling was that the bill was the Congressional enactment of an agreement which had been approved by the carriers and ratified by all but one of the unions involved. *Id.* at 1159. The Wisconsin repealer law was passed within a few days of its introduction at a special session of the Wisconsin State legislature. It was not referred to a committee in either house. Plaintiffs have indicated, furthermore, that the repeal, with the condition that those currently holding fireman positions would be fully protected, was the result of an agreement worked out with the carriers.

In addition, the language of the repealer quoted above states that the rights granted under the Act shall be part of the collective bargaining agreements between the parties. Under these circumstances, it appears appropriate to follow the persuasive reasoning of the Court in the *Washington Terminal* case. Even though that case dealt with a federal law with slightly different language,[1] the clear legislative intent expressed in both statutes is that the laws be treated as part of the agreements between the railroad carriers and the unions. This includes treatment of the Wisconsin statute as an agreement subject to interpretation by an adjustment board pursuant to Section 3 First (i). Consequently, the dispute as issue here is one which should be before a board of adjustment pursuant to Section 3 First (i), and not before the Court.

An injunction with the case in this posture will only be granted upon an equitable showing of irreparable injury. United Transportation Union v. Burlington Northern Inc., *supra,* 458 F. 2d at 357; Local Lodge No. 2144 v. Railway Express Agency Inc., 409 F.2d 312, 316–317 (2d Cir. 1969). Having viewed this case as a dispute under Section 6 of the Act, plaintiff has not attempted to show that the transfer of these individuals from Superior, Wisconsin to Minneapolis, Minnesota, a distance of about 150 miles, will cause irreparable injury. The record reflects, however, that the employees involved will be transferred without additional compensation if an injunction is not issued. They now reside in Wisconsin or northern Minnesota and will, in all likelihood, be required to change their permanent residence to take the jobs in Minneapolis. The disruption and damage that this may cause cannot be fully compensated by an award of monetary damages. This constitutes sufficient irreparable injury to warrant an injunction barring the involuntary transfer of the employees pending a resolution of the dispute before the appropriate adjustment board.

Accordingly, it is ordered that:

1. The parties to this action proceed expeditiously to refer this dispute to the appropriate adjustment board as provided in 45 U.S.C. § 153.

2. The defendant Burlington Northern Inc., and its agents, officers and employees be enjoined from transferring without their approval any locomotive fireman, helpers or hostlers from the area of Superior, Wisconsin to the St. Paul-Minneapolis, Minnesota area until resolution of this dispute before the appropriate adjustment board or until further order of this Court.

---

1. The federal law states that the substantive provisions of the enactment "shall have the same effect (including the preclusion of resort to either strike or lockout) as though arrived at by agreement of the parties under the Railway Labor Act (45 U.S.C. § 151 et seq.) . . . ." Public Law 91–226, 84 Stat. 118 (April 9, 1970).