In the Matter of CHICAGO, MILWAU-
KEE, ST. PAUL AND PACIFIC
RAILROAD COMPANY, Debtor.

Appeal of Douglas F. BARFKNECHT &
James Messner, et al.

Nos. 87–2147, 87–2164.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1988.

Decided July 19, 1988.

As Amended on Denial of Rehearing and
Rehearing En Banc Oct. 19, 1988.

Harold A. Ross, Ross & Kraushaar, Co., L.P.A., Cleveland, Ohio, for appellant.

Marvin F. Metge, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for appellee.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Former employees of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (the "Milwaukee Road") in Wisconsin appeal an order of the district court denying their claims for income lost when the Milwaukee Road furloughed them in violation of Wisconsin law. They allege that Wis.Stat. § 192.80 prohibited the Milwaukee Road from furloughing them because of the repeal of full crew laws. We vacate the judgment of the district court. The district court is directed to stay its proceedings pending proceedings before an appropriate adjustment board.

## I.

Prior to 1972, Wisconsin's various full crew laws mandated, for safety reasons, minimum sizes of railroad train crews. Wis.Stat. §§ 192.25, 192.26, 192.55(4), 195.-03(21) (repealed 1972). Pursuant to those laws, train crews were required to include an engineer, a fireman, a conductor and two brakemen. In 1972, Wisconsin repealed its full crew laws, rendering firemen unnecessary on any train or yard crew and leaving unspecified the number of brakemen on a train. Nevertheless the Wisconsin legislature sought to protect the rights of these employees whose services no longer are required as a result of the repeal. It enacted section 192.80, which provides in part:

> No employe of a railroad operating in this state on May 20, 1972 [the effective date of the repeal of the pre–1972 Wisconsin full crew laws] shall be discharged, laid off, furloughed, removed from train or engine service, reduced in monthly earnings, transferred without his approval or reduced in rank or classification, because of the repeal of [the Full Crew Laws].... The rights granted to the employes under this section shall be binding on the railroads and shall be part of and shall have the same force and effect as the collective bargaining agreements between the employe organizations and the railroads. Any employe who recovers from a railroad upon litigation brought to enforce his rights under this section shall be reimbursed by his employer for all reasonable attorney's fees necessarily incurred thereby.

Wis.Stat. § 192.80.

Shortly after the effective date of section 192.80, James Messner, a fireman for the Milwaukee Road, was involuntarily reassigned when the railroad abandoned and sold the division on which he worked. Although it is not clear what action the Milwaukee Road actually took against Messner, it apparently "blanked" his assignment and denied him seniority rights.

During the 1970s, the Milwaukee Road increasingly experienced financial problems, and by 1977 it was bankrupt. In response to the plight of the Milwaukee Road, Congress passed the Milwaukee Railroad Restructuring Act, 45 U.S.C. §§ 901–922 (the "MRRA"), "to avoid the

potential unemployment and damage to the economy of the region and of the Nation which a cessation of essential services by the Milwaukee Road would otherwise cause." *Id.* § 901. The MRRA led to voluntary employee pay reductions and to a crew reduction agreement between the Milwaukee Road and the United Transportation Union (the "Union"). The agreement eliminated firemen and second brakemen on all Milwaukee Road freight train and yard crews in an effort to reduce the Milwaukee Road's labor costs. The bankruptcy court approved the agreement, which stated specifically that "[a]ll road freight train and yard crews shall consist of no more than one conductor (foreman) and one brakeman (yard helper) ... unless otherwise agreed" and that "[a]ll other employees ... shall be placed on furlough beginning ... on February 9, 1982." Appellants' Appendix at 42–43. The final clause of the agreement provided: "This Agreement shall not affect any rights an employee may have under Wisconsin Statutes, Chapter 192, Section 80 (1980)." *Id.* at 49.

The crew reduction agreement provided a procedure for resolving disputes "as to the interpretation, application or enforcement of any provision [of the agreement]." *Id.* at 47. If the railroad and the Union were unable to settle a dispute within twenty days after it arose, either party could submit the dispute to an arbitration committee which would grant a hearing and make a final, binding decision.

On the effective date of the crew reduction agreement, the Milwaukee Road furloughed the appellants, including Messner, who had been firemen and engineers on the railroad and who had benefited from the full crew laws. The appellants commenced litigation in state court, alleging a violation of section 192.80. The case was removed to the district court, then remanded to state court.[1] The state court action was subsequently stayed by the district court in bankruptcy. Eventually, the appellants' claims were considered in the bankruptcy forum as claims against and requests for the payment of administrative expenses by the estate. Messner filed two claims: one based on his furlough in 1982 and the other for wages lost during the period 1972 (the year in which he lost his seniority rights) to 1982. The Soo Line Railroad Co. (the "Soo Line"), the appellee in this case, accepted responsibility as purchaser of the Milwaukee Road for defense of these claims. The district court dismissed the claims with prejudice, finding no violation of section 192.80. It held that the furlough of the appellants was "not occasioned by the repeal of the Wisconsin full crew laws ... but by the need for reduction necessitated by the financial distress of the [Milwaukee Road] and an arms-length collective bargaining agreement which provided for the crew reduction."[2] *In re Chicago, M., St. P. & Pac. R.R.*, No. 77 B 8999, order at 1 (N.D.Ill. June 23, 1987) [hereinafter *In re Milwaukee Road*].

The appellants contend that, contrary to the conclusion of the district court, they were furloughed because of the repeal of the full crew laws, in violation of section 192.80.[3] The Soo Line denies that the right created by section 192.80 has any force and effect in this case, because the Union relinquished the appellants' rights, which were subject to collective bargaining, in the crew reduction agreement. The Soo Line argues alternatively that, even if the Union has not relinquished the rights provided by sec-

---

1. The district court held that it was without jurisdiction because the complaint stated a cause of action only under state law. *Fricke v. Chicago, M., St. P. & Pac. R.R.*, 563 F.Supp. 311, 312 (E.D.Wis.1983).

2. The court also dismissed Messner's claim, even though he had lost his seniority rights prior to the crew reduction agreement. The court found Messner's claim to be "predicated upon the same statute and the same rationale" as appellants' claims. *In re Chicago, M., St. P. &*

*Pac. R.R.*, No. 77 B 8999, order at 2 (N.D.Ill. June 23, 1987).

3. In addition to joining the appeal of the other appellants, Messner argues that his claim for wages lost prior to 1982 was erroneously dismissed with the claims based on the 1982 furloughs because the crew reduction agreement had no effect prior to February 1982. Thus, he contends that his transfer in 1972 clearly violated section 192.80 and he is entitled to income lost from June 1972 through February 1982.

tion 192.80, federal law preempts the Wisconsin statute.

## II.

As an initial matter we must decide whether, as the Soo Line contends, section 192.80 is preempted by federal law. The preemption doctrine is applicable when a state law interferes with, or is contrary to, federal law. *Fidelity Fed. Savs. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Therefore, we examine section 192.80 to determine whether it does in fact conflict with any federal law. In our view, section 192.80 creates for certain Wisconsin railroad employees a right to retain their jobs. The district court correctly noted that it prevents railroad carriers "from taking immediate advantage of the repeal of the full crew laws" by prohibiting them from, among other things, furloughing employees because of the repeal. *In re Milwaukee Road*, order at 1. Thus, we agree with appellants that the statute provides for what is in effect the gradual repeal of full crew legislation by eliminating jobs through attrition rather than by employer action. In this connection, section 192.80 is labor legislation intended to soften the impact on employees of the repeal of full crew laws.[4] Thus, it represents a concession to railroad workers who would have been affected severely and suddenly by the abrupt repeal of full crew legislation. The union undoubtedly would not have lent its support to the repeal of full crew legislation without section 192.80.

■ The right not to be furloughed because of the repeal of full crew laws, however, is a negotiable one. Wisconsin, by the express language of section 192.80, has deemed this statutory right to be in effect a term of a collective bargaining agreement. Section 192.80 provides that the right "shall be binding on the railroads and shall be part of and shall have the same force and effect as the collective bargain-

ing agreements between the employe organizations and the railroads." This provision attached the right created in section 192.80 to all then-existing collective bargaining agreements, but it permits a union to relinquish or modify its employees' section 192.80 rights in a subsequent collective bargaining agreement. The right not to be furloughed because of the repeal of full crew laws is consequently the same as any other bargained-for right found in a collective bargaining agreement.

Returning to the question whether section 192.80, as a labor law, is preempted by federal law, we note that Congress "has never exercised authority to occupy the entire field of labor legislation." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). The Soo Line nevertheless contends that section 192.80 is preempted by the MRRA and the Railway Labor Act (the "RLA"), 45 U.S.C. §§ 151–188. Neither of these statutes expressly preempts the state law at issue here. Thus, we must examine the congressional purpose in enacting those laws, *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985), to determine whether Congress intended to "occupy the field" in this area. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).

The MRRA was enacted to prevent the cessation of essential services by the Milwaukee Road because of its insolvency. 45 U.S.C. § 901(b). Congress imposed "emergency measures" to help restructure the railroad swiftly and without disruption. Congress feared that the railroad's collapse "would result in the loss of many thousands of jobs of railroad workers and other workers whose employment is dependent upon rail service." *Id.* § 901(a)(3). At the same time, however, Congress realized that the Milwaukee Road's reorganization required the elimination of a considerable number of jobs because labor costs and other expenses had to be reduced. *Id.*

---

**4.** The appellants describe section 192.80 as safety-related legislation in an attempt to prevent federal law from overriding it. The repeal of full crew laws eliminates the possibility that

section 192.80 was intended to be safety legislation. Full crew laws were repealed when "full crews" were no longer necessary to ensure safety.

§ 901(a)(4), (8). Congress balanced these competing concerns by calling for the necessary reductions while granting some concessions to affected employees. *Id.* §§ 907–909. Congress directed the railroad and the unions to bargain collectively for reductions in force, but it required the parties to agree to provide protection for employees harmed by these reductions. *Id.* § 908. In addition, Congress granted to employees furloughed because of reductions in force the "first right of hire by any other [interstate] rail carrier." *Id.* § 907.

■ Congress may have intended that crew and pay reductions would facilitate the Milwaukee Road's reorganization, but section 192.80 does not necessarily impede that goal. The statute prevents the railroad from furloughing only some of its Wisconsin employees. Congress did not impose specific crew reductions in enacting the MRRA. It merely requested the parties to negotiate the labor cuts through collective bargaining. The Union and the Milwaukee Road were free to decide which employees would keep their jobs and which would be furloughed. Under the MRRA, as well as under Wisconsin law, the union could have decided to waive section 192.80 rights in the crew reduction agreement. Because the rights provided in the statute are negotiable, it does not conflict with the MRRA's goal of achieving labor cuts through negotiations between the railroad and the Union. Thus, it is the collective bargaining process rather than the state statute that would arguably hinder reductions in force. However, since the crew reduction agreement was reached pursuant to a request by Congress, it necessarily does not conflict with congressional intent.

■ The Soo Line also contends that section 192.80 is preempted by the RLA. The RLA was enacted in part "to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a(4). It gives railroad employees "the right to organize and bargain collectively," *id.* § 152 Fourth, and it provides an administrative procedure for settling disputes arising from collective bargaining agreements, *id.* § 153 First (i). The RLA is silent, however, on the power of states to create employee rights that are subject to collective bargaining. Because section 192.80 allows employees to bargain away their right not to be furloughed, we fail to see how it in any way restricts the parties' right to bargain collectively. We thus conclude that the Wisconsin law, which provides some protection to its railroad employees in connection with its repeal of full crew legislation, does not conflict with any federal law.[5]

### III.

■ Although the RLA does not preempt the substantive right provided by section 192.80—the negotiable right of railroad employees not to be furloughed because of the repeal of full crew laws—the remedy is one governed by federal law. Disputes arising under section 192.80 are, in essence and by the statute's own terms, disputes over the provisions of a collective bargaining agreement. And the RLA sets forth the procedure for settling such disputes.[6] The National Railroad Adjustment

5. The Soo Line also claims that section 192.80 places an impermissible burden on interstate commerce, but we disagree. We do not believe that the right not to be furloughed because of the repeal of full crew laws, a right that is subject to collective bargaining, unduly burdens interstate commerce. Any restriction that section 192.80 may place on the railroad's ability to cut labor costs affects interstate commerce, if at all, only indirectly. And Wisconsin's interest in protecting employees affected by the repeal of full crew legislation is a legitimate one. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (statute may be upheld where it promotes a legitimate lo-

cal public interest and only indirectly restricts interstate commerce).

6. Section 3 of the RLA provides in part:

The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... may be referred by petition of the parties or by either party to the appropriate division of the [National Railroad] Adjustment Board with a full statement of the facts and all supporting data bearing upon the parties.

45 U.S.C. § 153 First (i).

Board has exclusive jurisdiction to settle minor disputes arising out of collective bargaining agreements.[7] *Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 322–23, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972); *Leu v. Norfolk & W. Ry.*, 820 F.2d 825, 828 (7th Cir.1987). Thus the RLA "divests the state and federal courts of subject matter jurisdiction" over these disputes. *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1057 (7th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). The adjustment board, consisting of thirty-four members with considerable knowledge and experience in the railroad industry, is well suited to settle disputes of contractual interpretation. Because the adjustment board is not particularly equipped to make statutory or common-law interpretations, claims not arising from a collective bargaining agreement need not be submitted to the adjustment board for final adjudication. *Elgin, J. & E.R.R. v. Burley*, 325 U.S. 711, 723–26, 65 S.Ct. 1282, 1290–91, 89 L.Ed. 1886 (1945) (limiting grievances that must be submitted to the board to those arising out of the collective bargaining agreement).

A court, in determining whether it has the power to adjudicate a railroad labor dispute, must decide whether the dispute arises out of a collective bargaining agreement. Employees often characterize their labor disputes as state law claims in an effort to gain a judicial determination. For example, in *Andrews*, a railroad worker brought suit in state court seeking damages for wrongful discharge. He alleged that his employer refused to allow him to return to work after he had recovered from a car accident. The Supreme Court held that, despite the petitioner's effort to treat his cause of action as a state law claim, the source of his right not to be terminated at will was the collective bargaining agreement between the railroad and the union.

Because the railroad's obligation to petitioner depended on the interpretation of the collective bargaining agreement, his claim had to be submitted to arbitration. *Andrews*, 406 U.S. at 324, 92 S.Ct. at 1565; *see also Jackson*, 717 F.2d at 1048–49 (state retaliatory discharge claim, vindicating federal right, preempted by RLA).

■ Not all employment disputes must be submitted to the adjustment board. The Supreme Court in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974), held that Title VII claims can be brought before the courts without prior submission of the grievance to arbitration. According to the Court, the "distinctly separate nature" of contractual and statutory rights means that, while it is appropriate to resort to the arbitral forum to enforce contractual rights, it is also proper to seek in the courts enforcement of statutory rights. *Id.* at 50–52, 94 S.Ct. at 1020, 1022; *see also Colorado Anti–Discrimination Comm'n v. Continental Air Lines*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (state statute prohibiting racial discrimination in employment not preempted by RLA). An arbitrator is "confined to interpretation and application of the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). If an arbitration panel bases its decision on an interpretation of legislation rather than on an interpretation of the agreement, it exceeds the scope of its authority, and the ruling will not be enforced. *Id.; Gardner–Denver*, 415 U.S. at 53, 94 S.Ct. at 1022.

■ In this appeal, we must, among other things, decide if the appellants' claims against the estate for lost wages were dismissed erroneously by the district court in bankruptcy proceedings. In ruling on re-

---

7. A "minor" dispute involves an interpretation or application of the collective bargaining agreement. *Brotherhood of RR. Trainmen v. Chicago R. & Ind. R.R.*, 353 U.S. 30, 37, 77 S.Ct. 635, 639, 1 L.Ed.2d 622 (1957); *Leu v. Norfolk & W. Ry.*, 820 F.2d 825, 828 n. 7 (7th Cir.1987).

Although under 45 U.S.C. § 153 First (i) arbitration appears to be a matter of voluntary agreement, the Supreme Court has held that this section "compels the parties to arbitrate disputes before the National Railroad Adjustment Board." *See, e.g., Walker v. Southern Ry.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966).

quests for administrative expenses, the district court sitting in bankruptcy is, of course, entitled to great deference. The appellants claim entitlement to compensation for lost income based on section 192.-80. As we have concluded, however, the rights conferred by this section are subject to collective bargaining. Thus, the district court's ruling on appellants' claims necessitated an interpretation of the terms of the crew reduction agreement, a collective bargaining agreement. This it lacked jurisdiction to do. *See Order of Ry. Conductors v. Pitney*, 326 U.S. 561, 567–68, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946) (in a case in which it did "not clearly appear whether statute had been violated or complied with," district court in reorganization proceedings "should not have interpreted the [collective bargaining] contracts for purposes of finally adjudicating the dispute between the unions and the railroad"); [8] *cf. Lingle v. Norge*, —— U.S. ——, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988) (it is "clear that interpretation of collective bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements") (footnote omitted); *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912 ("state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreements of private parties, are preempted by those agreements").

The district court in *United Transportation Union v. Burlington Northern, Inc.*, 382 F.Supp. 896 (D.Minn.1974), also considered a labor dispute involving the interpretation of a collective bargaining agreement and Wis.Stat. § 192.80. In *Burling-*

*ton Northern*, the union had sought to enjoin the railroad from transferring certain firemen from the Duluth–Superior terminal to Minneapolis–St. Paul. The union contended that section 192.80 prohibited the transfer. The railroad argued that the collective bargaining agreement, which made no mention of the statute, required the transfer of junior qualified firemen to nearby locations to fill vacancies. *Id.* at 898.

The parties agreed that resolution of their dispute required a determination of whether section 192.80 prohibited the transfer of Wisconsin employees. Although interpretations of state statutes generally fall outside the jurisdictional confines of the adjustment board, the court reasoned that the statutory language (providing that the rights "shall be part of and shall have the same force and effect as the collective bargaining agreements") "obviate[d] the need to deal with the issue of the adjustment board's jurisdiction ... to make binding interpretation of state statutes." *Id.* at 899. The court found that the right created by section 192.80 was clearly intended to "be treated as part of the agreements between the railroad carriers and the unions ... subject to interpretation by an adjustment board pursuant to [the RLA]." *Id.* at 900. Accordingly, the court held that it lacked jurisdiction over the dispute and ordered the parties to refer the dispute to the appropriate adjustment board.

The district court in *Burlington Northern* found persuasive the decision in *International Brotherhood of Electrical Workers v. Washington Terminal Co.*, 473 F.2d 1156, 1172 (D.C.Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 95

---

**8.** *In re Chicago, M., St. P. & Pac. R.R.*, 827 F.2d 112 (7th Cir.1987), is a recent decision involving a "Wage Deferral Agreement" between the Railway Labor Executives' Association and the Milwaukee Road. We rejected the argument that interpretation of the Wage Deferral Agreement must be submitted to the adjustment board for two reasons. First, as in the present case, the agreement was executed as part of the reorganization proceedings. Second, the issue raised (violation of the absolute priority rule) was "grounded firmly in bankruptcy rather than la-

bor law." *Id.* at 120 n. 13. We reasoned that "[w]hen ... a question of bankruptcy law arises in the course of a reorganization proceeding, the body 'especially competent and specifically designated to deal with it,' *Pitney*, 326 U.S. at 567, 66 S.Ct. at 325, is the reorganization court, not the agencies created under the RLA." *Id.* Because the case before us does not involve a question of bankruptcy law, we think interpretation of the crew reduction agreement is best left to the adjustment board.

(1973). *Washington Terminal* involved a federal law which provided that it would "have the same effect ... as though arrived at by agreement of the parties under the [RLA]." S.J.Res. 190, 84 Stat. 118 (1970). The District of Columbia Circuit held that this language indicated Congress' intent that the law's interpretation be within the exclusive jurisdiction of the adjustment board. An important factor to the court in *Washington Terminal* was that the federal law was the result of an agreement between the railroads and the unions. 473 F.2d at 1159.

The present case is similar to *Washington Terminal* in two respects. First, the language of section 192.80, like that of the federal law, indicates legislative intent that the statute be treated the same as a labor agreement. Second, the statute itself represents a negotiated agreement between the Wisconsin Railroad Association and the United Transportation Union to "repeal the full crew laws of Wisconsin and [to] also provide protective measures for any employe who might be affected by reason of repeal." *See* Appellants' Appendix B at 21. The Wisconsin legislature enacted this agreement into law, in a special session, two months later. Thus, it seems particularly appropriate for the adjustment board to resolve this dispute involving a collective bargaining agreement and section 192.80.

In the present case, the Union had authority under section 192.80 to waive appellants' right not to be furloughed. *Cf. Alexander*, 415 U.S. at 51, 94 S.Ct. at 1021 ("It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike."). Whether it did so in the crew reduction

agreement is unclear. On the one hand, the agreement provides for across-the-board reductions in force that include the jobs held by appellants. On the other hand, the final clause provides: "This Agreement shall not affect any rights an employee may have under [section 192.-80]." We believe that this issue, fraught as it appears to be with circularity, is within the exclusive realm of the adjustment board pursuant to the RLA.

■ Messner's separate claim, although not governed by the crew reduction agreement, must also be submitted to the adjustment board. We presume that Messner's rights were governed by a collective bargaining agreement at the time of his transfer in 1972. It is unlikely that the agreement contains any reference to section 192.80, which was enacted in 1972. Nevertheless, the right granted to Messner by the statute attached to that agreement. Thus his argument that the Milwaukee Road violated his rights under section 192.-80 when it transferred him in 1972 is essentially a claim arising from the collective bargaining agreement then in effect.[9]

## IV.

We are well aware that appellants wasted no time in attempting to assert their rights under section 192.80. And we can hardly criticize them for not bringing their dispute to the attention of the proper forum when none of the courts prior to this one correctly examined its authority to decide their claims.[10] Nevertheless, we are bound to vacate the judgment of the district court. We remand this cause to the district court with instructions to stay its

---

9. Although the record is unclear, Messner appears to have filed grievances with respect to both of his claims (presumably pursuant to the crew reduction agreement and to the collective bargaining agreement in force at the time of his transfer). If the grievance procedures have not been completed, Messner is free to await their outcomes before proceeding to the adjustment board.

10. The issue of the proper forum to vindicate rights guaranteed by section 192.80 may be further confounded by the statute's last sentence, which states, "Any employe who recovers from

a railroad upon litigation brought to enforce his rights under this section shall be reimbursed by his employer for all reasonable attorney's fees necessarily incurred thereby."

We do not, however, interpret the use of the word "litigation" in section 192.80 as giving railroad employees the option of enforcing their rights in courts rather than through grievance procedures. For if section 192.80 were construed to give railroad employees a cause of action independent of the collective bargaining agreement, that statute would be preempted by both the MRRA and the RLA.

dismissal of appellants' claims. Appellants may proceed to the appropriate adjustment board for an interpretation of the crew reduction agreement. If they receive a favorable resolution, they may return to the district court for any appropriate further proceedings. If the resolution is unfavorable, the claims should be dismissed as appropriate.

JUDGMENT VACATED: CAUSE REMANDED WITH INSTRUCTIONS.