BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYEES

v.

ST. JOHNSBURY & LAMOILLE COUN-
TY RAILROAD; St. Johnsbury and
Lamoille County Railroad, Inc.; Wabash
Valley Railroad Co.; Lamoille Valley
Railroad Co. and State of Vermont.

LAMOILLE VALLEY RAILROAD

v.

LAMOILLE COUNTY RAILROAD, INC.
and St. Johnsbury & Lamoille
County Railroad.

ST. JOHNSBURY & LAMOILLE
COUNTY RAILROAD, INC.

v.

WABASH VALLEY RAILROAD CO. and
Lamoille Valley Railroad Co.

ST. JOHNSBURY & LAMOILLE
COUNTY RAILROAD, INC.

v.

M.P.S. ASSOCIATES, INC.

Civ. A. No. 79–142.

United States District Court,
D. Vermont.

April 24, 1981.

Michael Schein, Hoff, Wilson & Powell, Burlington, Vt., and Raymond J. Sweeney, North Andover, Mass., for plaintiff.

Philip J. Fitzpatrick, Jeffersonville, Vt., and Richard C. Sargent, Sargent & White, Morrisville, Vt., for defendants St. Johnsbury & Lamoille County Railroad and St. Johnsbury & Lamoille County Railroad, Inc.

Priscilla K. Reidinger, Downs, Rachlin & Martin, South Burlington, Vt., for defendant Wabash Valley Railroad.

Robert Gensburg, Gensburg & Axelrod, St. Johnsbury, Vt., for defendant Lamoille Valley Railroad Co.

Richard M. Finn, Asst. Atty. Gen., State of Vt., Montpelier, Vt., for defendant State of Vt.

Edwin Free, Richard E. Davis Associates, Inc., Barre, Vt., for third-party defendant, M.P.S. Associates, Inc.

## OPINION AND ORDER

COFFRIN, District Judge.

This is a civil action in which plaintiff seeks to enforce two awards of the National Railroad Adjustment Board (NRAB). Jurisdiction to enforce the awards is present under 45 U.S.C. § 153 First (p) and 28 U.S.C. §§ 1331 and 1337.

Plaintiff Brotherhood of Maintenance of Way Employees (Brotherhood) is an unincorporated association whose members are employees in the track maintenance departments of railroad carriers throughout the United States and Canada.[1] The defend-

---

1. The factual summary follows a Statement of Facts filed by this court on March 5, 1981. The statement sets out in detail certain uncontroverted facts which underlie this lawsuit. The

ants in this case include all the owners and operators since 1967 of a small railroad which runs from east to west across northern Vermont. Plaintiff has represented the railroad's track maintenance employees during the period when each of the defendants owned or operated the railroad. Certain of plaintiff's members claim that during the years 1972, 1973, and 1974 they became entitled to paid vacation time earned during the years 1971, 1972, and 1973. Plaintiff submitted this claim to the NRAB in November 1975, and in awards number 21522 and 21524 dated May 19, 1977, the Third Division of the NRAB sitting in Chicago ruled that the employees had earned vacation time for which they had not received compensation.[2]

The controversy before us today arises from the series of reorganizations experienced by the railroad in recent years. Operation of the railroad has changed hands so many times since the vacation pay was earned that the question of which organization must compensate the employees has no ready answer. A corporation controlled by Samuel Pinsley owned and operated the railroad from 1967 until 1973. Members of the Brotherhood earned all of the vacation pay at issue in this case during the period of ownership of the Pinsley corporation. The Pinsley corporation, called the St. Johnsbury and Lamoille County Railroad (St. J. & L.C.R.R./Pinsley) at the time it operated the railroad, now appears in this action as a third party defendant under the name of M.P.S. Associates, Inc.

On November 7, 1972, St. J. & L.C.R.R./Pinsley filed an application under Section 1(18) of the Interstate Commerce Act, 49 U.S.C. § 10903(a)(2), with the Interstate Commerce Commission (ICC) to abandon the railroad. In June 1973, the ICC issued its initial abandonment order. In October 1973, however, the ICC amended its initial order to provide that the railroad would not cease operations but would be sold to the Vermont Transportation Authority (VTA). On December 7, 1973, the ICC granted St. J. & L.C.R.R./Pinsley authority to abandon the entire line of the railroad in ICC Docket No. AB65. At the same time, VTA acquired all the real and personal property of the railroad pursuant to 1973 Vt. Acts, No. 182 (adjourned session.)

The Brotherhood did not participate in the St. J. & L.C.R.R./Pinsley abandonment proceedings before the ICC. The United Transportation Union, representing the train operating personnel only, did appear and participate in those proceedings. In granting the St. J. & L.C.R.R./Pinsley petition to abandon, the ICC did not impose any conditions for the protection of railroad employees.

In the course of the proceedings which culminated in the transfer of ownership of the railroad to VTA, daily operation of the railroad pursuant to a lease agreement passed to the Lamoille County Railroad, Inc., a corporation headed by Bruno Loati, which in June 1974 changed its name to St. Johnsbury and Lamoille County Railway, Inc. (L.C.R.R./St. J. & L.C. Ry., Inc./Loati). L.C.R.R./St. J. & L.C. Ry., Inc./Loati commenced operation of the railroad as a common carrier on September 18, 1973, pursuant to an agreement with VTA. L.C.R.R./St. J. & L.C. Ry., Inc./Loati obtained an ICC certificate of public convenience and necessity to operate shortly thereafter.

In June 1974 VTA transferred its functions, including management of the railroad, to the Vermont Public Service Board (VPSB). Neither VTA nor VPSB has been a signatory to any labor agreement concerning the disputed vacation pay. In addition, L.C.R.R./St. J. & L.C. Ry., Inc./Loati never entered into a new labor agreement with the Brotherhood.

statement does not result from any evidentiary factfinding. Instead, after an opportunity to review and comment on the statement, counsel for all parties accepted it as essentially accurate at a hearing held by the court on March 2, 1981.

2. In award number 21522 the NRAB also rejected the claim of an employee that he should be reimbursed for lost wages because he was deprived of certain displacement rights.

L.C.R.R./St. J. & L.C. Ry., Inc./Loati refused to pay for any outstanding vacation pay asserted to have been earned by members of the Brotherhood during the period when St. J. and L.C.R.R./Pinsley operated the railroad. In November 1975 the Brotherhood submitted the dispute to the National Railroad Adjustment Board (NRAB). In May 1976 the NRAB held a hearing on the vacation pay dispute. Only the Brotherhood and L.C.R.R./St. J. & L.C. Ry., Inc./Loati received notice of the hearing, and they were the only parties to participate. Bruno Loati, appearing *pro se*, represented L.C.R.R./St. J. & L.C. Ry., Inc./Loati at the hearing.

On September 18, 1976, the agreement between L.C.R.R./St. J. & L.C. Ry., Inc./Loati and VTA/VPSB expired by its terms, and at about the same time VPSB entered into an operating agreement with the Vermont Northern Railroad Company, now known as the Wabash Valley Railroad Company (V.N.R.R. Co./W.V.R.R. Co.). L.C.R.R./St. J. & L.C. Ry., Inc./Loati continued to operate the railroad until October 4, 1976 when V.N.R.R./W.V.R.R. took over pursuant to ICC Car Service Order No. 1254. On October 21, 1976, V.N.R.R./W.V.R.R. entered into a new labor agreement with the Brotherhood which provided for vacation entitlement in the years 1976 and 1977 but was silent with respect to vacations earned during 1972, 1973, and 1974.

V.N.R.R./W.V.R.R. was never successful in negotiating a long-term operating agreement with VPSB, and when its operating lease with VPSB expired in December 1977, Lamoille Valley Railroad Company (L.V.R.R.) took over operation of the railroad. On January 1, 1978, by Car Service Order No. 1291, the ICC directed L.V.R.R. to commence and carry on the railroad operation. Simultaneously, by ICC Docket No. AB–134 and Finance Docket No. 28320, V.N.R.R./W.V.R.R. and L.C.R.R./St. J. & L.C. Ry., Inc./Loati received certificates of abandonment pursuant to Section 1(18) of the Interstate Commerce Act.[3] L.V.R.R. is the operating carrier at the present time.

Plaintiff names as defendants in this enforcement action the St. Johnsbury and Lamoille County Railroad (the Pinsley corporation), all three lessee-operators, and the State of Vermont. Although the award itself names only the St. Johnsbury and Lamoille County Railroad, the award assumes as a matter of law that the collective bargaining agreement of the parties survives a change in the owner or operator of the railroad. In the view of the NRAB, therefore, successor owners and operators are liable for vacation pay earned by employees during the operation of the railroad by the St. J. & L.C.R.R./Pinsley. The award expressly anticipates liability for the accrued vacation pay on the part of L.C.R.R./St. J. & L.C. Ry., Inc./Loati.

In addition to plaintiff's claim for enforcement, defendant L.V.R.R., the present operator, has crossclaimed for indemnification against both L.C.R.R./St. J. & L.C. Ry., Inc./Loati and St. J. & L.C.R.R./Pinsley. L.C.R.R./St. J. & L.C. Ry., Inc./Loati has crossclaimed against both L.V.R.R. and V.N.R.R./W.V.R.R. Finally, L.C.R.R./St. J. & L.C. Ry., Inc./Loati has brought a third party complaint against M.P.S. Associates, Inc.—the present name for the corporation which was once named St. Johnsbury and Lamoille County Railroad (St. J. & L.C.R.R./Pinsley).

This case is now before the court on the following motions:

1. Defendant Lamoille Valley Railroad's Motions to Dismiss and for Summary Judgment,

2. Defendant Lamoille Valley Railroad's Motion to Dismiss the Crossclaim of Defendant St. Johnsbury and Lamoille County Railroad, Inc.,

3. Defendant St. Johnsbury and Lamoille County, Inc.'s Motion to Dismiss,

4. Plaintiff's Motion for Summary Judgment, and

5. Defendant Wabash Valley Railroad Company's Motion for Summary Judgment.

---

3. St. J. & L.C.R.R./Pinsley, L.C.R.R./St. J. & L.C. Ry., Inc./Loati, V.N.R.R./W.V.R.R., and L.V.R.R. are all entirely unrelated corporations and separate distinct carriers.

*Analysis*

### I. Enforcement and Scope of Review of NRAB Awards

█ The Railway Labor Act, 45 U.S.C. §§ 151–188, vests exclusive jurisdiction in the NRAB over claims arising out of the interpretation of collective bargaining agreements between railroads and their employees. Any railway worker asserting such a claim against his employer must first bring his claim before the appropriate division of the NRAB. *Andrews v. Louisville and Nashville Railroad*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). After the NRAB has ruled on the claim, the United States district courts have jurisdiction under 45 U.S.C. § 153 First (p) to enforce the orders and awards of the NRAB. Since 1966, the Railway Labor Act has provided that all findings and orders of the NRAB conclusively bind the parties to the dispute. Under the terms of the Act, the district courts may set aside an award for only three reasons:

1. failure of the order to confine itself to matters within the jurisdiction of the division of the NRAB issuing the order,[4]

2. failure of the division to comply with the provisions of the Railway Labor Act, or

3. for reasons of fraud and corruption. 45 U.S.C. § 153 First (p).

In construing the enforcement provisions of the Railway Labor Act, the Supreme Court has emphasized that the courts must defer to the NRAB's findings of fact and interpretation of the law of collective bargaining agreements. In *Slocum v. Delaware Lackawanna and Western Railroad*, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), the Court noted that the Act's statement of general purpose, 45 U.S.C. § 151a, clearly expresses the intention of Congress to establish the NRAB as the exclusive forum for the resolution of all railroad contract disputes and employee grievances in order to prevent the disruption of the industry by strikes and labor unrest. More recently, in *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), the Court observed that

> In enacting ... [the Railway Labor Act] Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining arguments.... The Adjustment Board [NRAB] was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions.... Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts.... The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations.

*Id.* at 94, 99 S.Ct. at 402 (citations omitted).

*Sheehan* demonstrates the narrow scope of judicial review with particular force since the opinion of the Tenth Circuit below characterized the question before the district court as a legal question not within the area of special expertise of the NRAB.

---

4. The courts have interpreted this basis for review to permit the district courts to refuse to enforce an NRAB decision on the ground that it lacks a foundation in reason or fact. *Brotherhood of R.R. Trainmen v. Central of Ga. Ry.*, 415 F.2d 403 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). Judge Wisdom's opinion in *Central of Georgia* derives this somewhat expansive reading of the statute from the Senate Labor and Public Welfare Committee report which accompanied the 1966 amendments to the Railway Labor Act. The report reads in part "[the committee assumes] that a Federal court would have the power to decline to enforce an award which was actually and indisputably without foundation in reason or fact, and the committee intends that, under this bill, the courts will have that power." 1966 U.S.Code Cong. and Admin. News at 2287 (quoted in *Central of Georgia* at 410). Judge Wisdom also relied on the inherent authority of the judiciary to review the 'final' decisions of administrative agencies for lawless behavior despite the presence of statutory language designed to confine judicial review to a narrow scope. *Central of Georgia*, 415 F.2d at 413 n.20.

*Sheehan v. Union Pacific Railroad*, 576 F.2d 854 (10th Cir. 1978). The question in *Sheehan* concerned the NRAB's application of a limitations period to a claim asserted by a railroad employee. In responding to the suggestion of the Tenth Circuit that "it is possible that the extent or scope of judicial review of *purely legal issues* decided by the National Railroad Adjustment Board should be reexamined," *id.* at 856, the Supreme Court limited review to the three statutory bases and held that the NRAB's determination of the applicable limitations period was final and not open to review by the district court.

In addition to the statutory bases for review, the courts have long recognized the jurisdiction of the district courts to review the proceedings of the NRAB for instances of failure to provide due process to the parties to a dispute. *O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694 (7th Cir. 1978); *Kotakis v. Elgin, Joliet, and Eastern Railway*, 520 F.2d 570, 574 (7th Cir. 1975), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975); *Rosen v. Eastern Air Lines, Inc.*, 400 F.2d 462, 464 (5th Cir. 1968), *cert. denied*, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969); *Southern Pacific Co. v. Wilson*, 378 F.2d 533, 536–537 (5th Cir. 1967); *D'Elia v. New York, New Haven and Hartford Railroad*, 230 F.Supp. 912, 915 (D.Ct.1964), *aff'd*, 338 F.2d 701 (2d Cir. 1964), *cert. denied*, 380 U.S. 978, 85 S.Ct. 1340, 14 L.Ed.2d 272 (1965). *Sheehan* is somewhat troubling in this connection since the Tenth Circuit held that the action of the NRAB challenged by the plaintiff amount-ed to a violation of due process.[5] The Supreme Court failed to recognize any scope of review beyond the statutory provisions and did not discuss the constitutional basis for plaintiff's claim. Thus, a possible reading of *Sheehan* is that a claim that the NRAB failed to provide due process may not be heard by the district court because unconstitutionality is not among the three narrow bases for review under 45 U.S.C. § 153 First (p). The better reading of the *Sheehan* opinion, however, is that it is largely directed at refuting the Tenth Circuit's suggestion that a wide range of purely *legal* questions might be open for review by the district court. *Sheehan* alone is not enough to put an end to the entirely reasonable practice of the district courts of examining NRAB decisions for violations of due process prior to the enforcement of an award.

In sum, this court has four possible bases for review of the NRAB award. In light of our disposition of this case, we need only rely on our power to review for compliance with the terms of the Railway Labor Act. If this case returns to us for enforcement after rehearing, all four bases for review will be open to this court again. In particular, we note that both due process issues and the requirement that an award have some foundation in reason or fact may be raised by the NRAB's conclusion that successor carriers are bound as a matter of law to compensate their employees for vacation benefits which accrued during the operation of the railroad at an earlier date by some other carrier.[6]

---

**5.** In the *Sheehan* litigation, a railroad employee brought an action for breach of contract against a carrier in state court. The state court dismissed this action after the Supreme Court held in *Andrews* that the NRAB had exclusive jurisdiction over all railroad labor disputes. When the employee then tried to bring his claim before the NRAB, the NRAB ruled that the applicable limitations period had run while the state court action was pending. The Tenth Circuit held that the failure of the NRAB to consider the employee's argument that the limitations period was tolled during the pendency of the state court action violated the employee's right to due process.

**6.** We are not persuaded that the broad statement in the NRAB award that "the law seems to be well settled that the collective bargaining agreement of the parties survives a change in ownership of the property" is correct. The Supreme Court opinions imposing successorship liability all concern the enforcement of decisions of the National Labor Relations Board (NLRB). The courts have not imposed successorship liability in any reported case brought under the enforcement provisions of the Railway Labor Act. If we assume, moreover, that the NRAB has the same authority as the NLRB to issue awards and decisions which bind successors, it does not follow from the NLRB cases that the successor operators in the present case are obliged to pay the railroad

## II. Notice Requirements in NRAB Proceedings

Plaintiff seeks enforcement of the NRAB award against a veritable laundry list of defendants—everyone who has been involved in some way with the operation of the railroad since 1967. The NRAB sent notice of the proceedings to the Brotherhood and L.C.R.R./St. J. & L.C. Ry., Inc./Loati, and those two organizations were the only parties to appear at the hearing in May 1976.[7] On May 19, 1977, the date the NRAB issued the two awards involved in this case, one of the defendants, L.V.R.R., was not even in existence. The lack of notice to and absence from the NRAB proceedings of St. J. & L.C.R.R./Pinsley, the party during whose period of operation the vacation pay was allegedly earned, is especially troubling.

In sum, the administrative record on which this action is based is murky indeed.

employees for vacation pay earned while St. J. & L.C.R.R./Pinsley operated the railroad.

The Supreme Court has approved the imposition of successor liability only in cases in which the successor received an opportunity to appear before the NLRB. For example, in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed.2d 388 (1973), a case upholding the imposition of liability on a successor for the unfair labor practices of the predecessor company, the Court justified its decision on the grounds that the successor had participated in the original NLRB proceeding and had notice of the claim before purchasing the business. The purchase price, therefore, could be said to reflect the assumption of liability by the purchaser. *Id.* at 185, 94 S.Ct. at 425. At a minimum, *Golden State* requires that any successor receive an opportunity to appear before the NLRB before it can be bound by a decision issued against its predecessor:

> There will be no adjudication of liability against a bona fide successor "without affording [it] a full opportunity at a hearing, after adequate notice, to present evidence on the question of whether it is a successor which is responsible for remedying a predecessor's unfair labor practices. The successor [will] also be entitled, of course, to be heard against the enforcement of any order issued against it."

*Id.* at 180, 94 S.Ct. at 423 (quoting *Perma Vinyl Corp.*, 164 N.L.R.B. 968, 969 (1967), enforced *sub nom. United States Pipe and Foundry Co. v. NLRB*, 398 F.2d 544 (5th Cir. 1968). Thus, successors are not automatically liable for claims against their predecessors; notice and a fair opportunity to be heard before the NLRB or, by implication, the NRAB are conditions precedent to any imposition of successorship liability.

The Supreme Court has also limited the types of claims for which it will permit successorship liability. In *Golden State,* the Court noted that "[a] purchasing company cannot be obligated to carry out ... *every* outstanding and unsatisfied order of the [National Labor Relations] Board." *Golden State,* 414 U.S. at 184 n.6, 94 S.Ct. at 425 n.6 (emphasis added). The *Golden State* opinion leaves intact the decision of the Court in *NLRB v. Burns Int'l Security Servs.,* *Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), in which the Court held that successors are not bound by the substantive terms of the collective bargaining agreement. In *Burns* the Court observed that

> Nothing in ... [the successor's] actions ... indicated that ... [the successor] was assuming the obligations of the contract, and "allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the [Labor Management Relations] Act is based—private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract."

*Id.* at 287, 92 S.Ct. at 1582 (quoting *H.K. Porter Co. v. NLRB,* 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970)).

In the present case, liability for unpaid vacation pay is part of the substantive bargain struck between the union and each successive operator. Such a dispute should have been resolved either at the ICC termination proceedings or through an agreement with the successors reached through the normal collective bargaining process. Although the determination of which contractual obligations the successors assumed is now a question for the NRAB to resolve on rehearing, we note that this question cannot be answered properly by a bald assertion in the NRAB award that the collective bargaining agreement automatically survives the change in ownership.

7. Although the NRAB proceedings may be technically enforceable against L.C.R.R./St. J. & L.C. Ry., Inc./Loati, disposition of the Loati corporation's crossclaims must await further proceedings before the NRAB. It is far from clear, moreover, that L.C.R.R./St. J. & L.C. Ry., Inc./Loati is automatically liable for the debts of the previous operator to the railroad employees. See Footnote 6 above. Confined as we are to a narrow scope of review, we would prefer to see the issue of successorship liability fully considered and resolved by the NRAB. We are unwilling, therefore, to enforce the NRAB award against any defendant until the case has been heard again by the NRAB.

On statutory grounds alone we are unwilling to enforce the NRAB award until we are certain that each defendant against whom enforcement may properly run has had a fair opportunity to present its case to the NRAB. We note, moreover, that even if the Railway Labor Act itself did not require notice for all parties involved in a contract dispute, enforcement of an award for money damages against parties not present at the NRAB proceedings raises serious due process issues.

### A. Statutory Notice Requirement

45 U.S.C. § 153 First (j) provides in part that the NRAB "shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any dispute before them." The Supreme Court has interpreted this requirement to mean that in resolving a dispute involving multiple parties the NRAB must bring together all interested parties in order to dispose of the entire dispute in a single proceeding. A party is not obliged to appear after receiving notice, but notice is necessary in order to hold a single hearing which will resolve all aspects of a dispute. *Transportation-Communication Employees Union v. Union Pacific Railroad*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). In cases in which all interested parties do not receive notice, the NRAB award is not binding on the absent parties. *Elgin, Joliet, and Eastern Railway v. Burley*, 325 U.S. 711, 738, 65 S.Ct. 1282, 1297, 89 L.Ed. 1886 (1945), *aff'd on rehearing*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); *Nord v. Griffin*, 86 F.2d 481 (7th Cir. 1936), *cert. denied*, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879 (1937); *Templeton v. Atchison, Topeka and Santa Fe Railway*, 84 F.Supp. 162 (W.D.Mo.1949), *aff'd sub nom. Brotherhood of Railroad Trainmen v. Templeton*, 181 F.2d 527 (8th Cir. 1950), *cert. denied*, 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605 (1950); *Allain v. Tummon*, 212 F.2d 32 (7th Cir. 1954).

The rule that notice to all interested parties is necessary has found its most frequent application in three-cornered jurisdictional disputes between an employer and two rival unions. In *Brotherhood of Railroad Trainmen v. Swan*, 214 F.2d 56 (7th Cir. 1954), for example, one group of employees, the trainmen, received a series of awards from the NRAB permitting them to perform work which another group of employees, the express-messengers, claimed they were entitled to perform. The express-messengers were not parties to the proceedings which led to the awards. After the awards issued, the trainmen, responding to the holding by the district court in *Templeton* that NRAB awards were void without notice to all parties involved in the dispute, sought to reopen the proceedings to permit the express-messengers to participate. When the question of reopening the awards reached the Seventh Circuit, the court held that pursuant to 45 U.S.C. § 153 First (j) the NRAB must reopen the proceedings and permit the parties to proceed *de novo*. The absence of necessary parties—the express-messengers—voided the awards and left the underlying disputes pending before the NRAB. *See also Transportation-Communication Employees.*

In the present case, virtually every defendant against whom plaintiff seeks to enforce the award is by definition, a carrier involved in the dispute.[8] With the exception of L.C.R.R./St. J. & L.C. Ry., Inc./Loati, no defendant was a party to the NRAB proceedings. The current operator of the railroad, L.V.R.R., received no notice of the proceedings and was not even in existence at the time of the award. Since not all parties necessary for the resolution of the vacation pay dispute received notice of the NRAB proceedings as required by 45 U.S.C. § 153 First (j), the proceedings were not conducted in compliance with section 153.

---

8. Whether the State of Vermont is a carrier for purposes of the Railway Labor Act is a question which we need not answer at this time. If the NRAB determines that the State is a carrier and if an award against the State comes before us for enforcement, we will have to determine whether such an award is enforceable as properly within the terms of the statute and the jurisdiction of the NRAB.

Accordingly, we decline to enforce the award "for failure of the division [of the NRAB] to comply with the requirements of [the Railway Labor Act]." 45 U.S.C. § 153 First (p.).

### B. Due Process Requirements

Because the Railway Labor Act itself, properly applied, provides adequate procedural protection for all parties involved in the dispute, we need not reach the question of due process today. In any event, the record is not sufficiently developed at this point to determine whether enforcement of the award against the various defendants would be unconstitutional. We note, however, that in some cases the enforcement of an NRAB award to the detriment of an absent party has been held to violate due process. *Templeton*, 84 F.Supp. at 169.

### III. Availability of Remand

■ We hold that the proper disposition of this case on the motions before us is a remand to the NRAB for further proceedings. We are unwilling to enforce an award which does not clearly name the parties against whom it is enforceable and which results from proceedings before the NRAB of which not all interested parties were given notice. We lack authority under section 153 First (p) to try this case anew, and we acknowledge the greater experience of the NRAB in railroad affairs. If the absent parties are to have any opportunity to present their side of the dispute, therefore, it must be before the NRAB and its panel of experts.

Although 45 U.S.C. § 153 First (p) does not provide explicitly for remand as a possible disposition of an enforcement action, remand has been available since 1966 for actions brought under section 153 First (q) to review the denial of an award by the NRAB. In *Transportation-Communication Employees*, the Supreme Court held that remand is also available by implication in section 153 First (p) actions.

In the *Transportation-Communication Employees* case, a jurisdictional dispute between two rival unions and an employer, one union received an award against the employer. Although the rival had received notice of the NRAB proceeding, it chose not to join in the action. The Court held that the NRAB could not confine its decision to the relations between the employer and one of the unions; the statute required resolution of the entire controversy in a single proceeding binding on all interested parties. Therefore, the Court remanded the case to the district court with instructions to remand the case to the NRAB for further proceedings at which the rival union would receive a second opportunity to appear. The Court noted in conclusion that the order of the NRAB "based upon such thorough consideration after giving the . . . [rival] union a chance to be heard, will then be enforceable by the courts." *Transportation-Communication Employees*, 385 U.S. at 166, 87 S.Ct. at 374. *See Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul and Pacific Railroad*, 284 F.Supp. 401, 407 (N.D.Ill.1968); *United Transportation Union v. Southern Pacific Transportation Co.*, 529 F.2d 691 (5th Cir. 1976) (award too indefinite; remand to Board for clarification); *Great Northern Railway v. National Railroad Adjustment Board*, 422 F.2d 1187, 1191 (7th Cir. 1970).

Remand to the NRAB is also the appropriate course in the present case. The only fair and practical way to resolve the vacation pay dispute is to call *all* the parties involved in the matter before the NRAB to permit them to present their positions to the expert panel. If plaintiff prevails before the NRAB on rehearing, however, it would be a waste of time and resources to require plaintiff to file an entirely new enforcement action. *See Hodges v. Atlantic Coast Line Railroad*, 310 F.2d 438, 445 (5th Cir. 1962). Accordingly, although we remand this matter to the NRAB for further proceedings consistent with this opinion, plaintiff is granted leave to move to reopen the case before this court should it become necessary to enforce any order issued by the NRAB hereafter.

### ORDER

Upon consideration of the motions described herein and the memoranda in sup-

port thereof, and in accordance with the foregoing discussion, it is hereby ORDERED that:

1. Defendant Lamoille Valley Railroad's Motions to Dismiss and for Summary Judgment are denied;

2. Defendant Lamoille Valley Railroad's Motion to Dismiss the Crossclaim of Defendant St. Johnsbury and Lamoille County Railroad, Inc. is denied;

3. Defendant St. Johnsbury and Lamoille County, Inc.'s Motion to Dismiss is denied;

4. Plaintiff's Motion for Summary Judgment is denied;

5. Wabash Valley Railroad Company's Motion for Summary Judgment is denied;

6. This case is remanded to the Third Division of the National Railroad Adjustment Board for rehearing in accordance with this opinion.