794 F.2d 816
 123 L.R.R.M. (BNA) 2566, 105 Lab.Cas. P 11,994
 BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, Plaintiff-Appellee,
v.
ST. JOHNSBURY & LAMOILLE COUNTY RAILROAD/M.P.S. ASSOCIATES,
INC.; St. Johnsbury and Lamoille County Railroad, Inc.;
State of Vermont/Vermont Public Service Board/Vermont
Transportation Authority; Wabash Valley Railroad Company;
and Lamoille Valley Railroad Company, Defendants.
Appeal of STATE OF VERMONT/VERMONT PUBLIC SERVICE
BOARD/VERMONT TRANSPORTATION AUTHORITY,
Defendants-Appellants.
 No. 1070, Docket 86-7079.
 United States Court of Appeals,
Second Circuit.
 Argued April 7, 1986.
Decided June 30, 1986.
 
 John K. Dunleavy, Ass't Atty. Gen., Montpelier, Vt. (Jeffrey L. Amestoy, Atty. Gen., Montpelier, Vt., of counsel), for defendants-appellants.
 John A. Edmond, Washington, D.C. (Raymond J. Sweeney and Guerrieri & Sweeney, Washington, D.C., of counsel), for plaintiff-appellee.
 Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 The State of Vermont appeals from a summary judgment entered against it in the United States District Court for the District of Vermont (Billings, J.) in the amount of $24,427.26. The judgment is for vacation pay to which members of the Brotherhood of Maintenance of Way Employees became entitled while they were working for the St. Johnsbury and Lamoille County Railroad (St. Johnsbury Railroad). For reasons hereafter assigned, we vacate and remand.
 
 
 2
 At various times between 1967 and 1973, the St. Johnsbury Railroad, a small carrier in northern Vermont, employed twenty-eight Brotherhood members. In 1973 the Interstate Commerce Commission permitted the Railroad to abandon its service, providing that, concurrent with the abandonment, the Railroad be offered "for acquisition and/or operation" under a Commission Emergency Service Order to the Lamoille County Railroad, Inc. and the Vermont Transportation Authority. While the Lamoille County Railroad, Inc. was operating the railroad under the Emergency Service Order, the I.C.C. granted full abandonment authority to the St. Johnsbury Railroad.
 
 
 3
 In April of 1974, the I.C.C. certified that public convenience and necessity required that the railroad to be acquired by the Transportation Authority be leased to the Lamoille County Railroad, Inc., (subsequently renamed the St. Johnsbury and Lamoille County Railway, Inc. and referred to herein as the St. Johnsbury Railway).[1] The St. Johnsbury Railway operated the road under lease from the State until September 1976. In 1975 the Brotherhood won a certification election authorizing it to represent the St. Johnsbury Railway's maintenance of way employees. The Brotherhood then demanded that the St. Johnsbury Railway pay its members vacation pay to which they became entitled while employed by the St. Johnsbury Railroad; and, when this demand was rejected, the matter was submitted to the National Railroad Adjustment Board.
 
 
 4
 By decision dated May 19, 1977, the Board held that the labor agreement between the Brotherhood and the St. Johnsbury Railroad survived the change in ownership and that the "Carrier [the St. Johnsbury Railway] and the Employees involved in this dispute are respectively Carrier and Employees within the meaning of the Railway Labor Act, as approved June 21, 1934." The Board sustained the claims against the St. Johnsbury Railway.
 
 
 5
 The correct procedure for the Brotherhood at that point was to petition the district court for enforcement of the award. 45 U.S.C. Sec. 153 First (p). The proper role for the district court then would have been to treat the findings and orders of the Board as conclusive and to enforce the award. Id. If these correct and simple procedures had been followed, the matter would not now be before this Court, some nine years after the award was made. However, for reasons which may only be surmised, the Brotherhood chose not to follow the path well-marked by Congress.
 
 
 6
 In 1979 the Brotherhood attorneys brought an action in the District Court of Vermont which they describe in their brief before this Court as an action "seeking enforcement of the 1975 NRAB awards." See also 512 F.Supp. 1079, 1085. However, instead of limiting their claim to the St. Johnsbury Railway, against whom the Board's award had been made, the attorneys also named as defendants the St. Johnsbury Railroad, the Wabash Valley Railroad Company (which succeeded the St. Johnsbury Railway as lessee-operator in September 1976 and operated as such for about one year), the Lamoille Valley Railroad Company (which took over from the Wabash Valley Railroad Company), and the State of Vermont. If, in fact, the Brotherhood was seeking relief against these additionally named defendants pursuant to the provisions of the Railway Labor Act, its attorneys must have known that the district court had no jurisdiction to grant such relief, original jurisdiction being exclusive with the Adjustment Board. Brotherhood of Locomotive Engineers v. Louisville & N.R. Co., 373 U.S. 33, 38-39, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). Nonetheless, through the procedural device of suing everyone, the attorneys persuaded the district court to hold that the award which the Board already had made "does not clearly name the parties against whom it is enforceable and which results from proceedings before the NRAB of which not all interested parties were given notice." 512 F.Supp. at 1087.
 
 
 7
 The district court erred in so holding. The Brotherhood made its administrative claim for vacation pay only against the St. Johnsbury Railway; the St. Johnsbury Railway was the only party interested and notified; the award clearly named the St. Johnsbury Railway as the party against whom the award was to be enforced. The Adjustment Board gave the Brotherhood exactly what it asked for. The district court should have enforced the unambiguous award and dismissed the claims against all of the other defendants that purported to be based on the award. See Broady v. Illinois Cent. R. Co., 191 F.2d 73, 76-79 (7th Cir.), cert. denied, 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672 (1951); Brotherhood of Locomotive Firemen and Enginemen v. The New York, N.H. & H.R. Co., 296 F.Supp. 1044, 1049 (D.Conn.1968); Alabama State Federation of Labor v. Kurn, 46 F.Supp. 385, 386 (N.D.Ala.1942).
 
 
 8
 The district court also erred in refusing to enforce the Board's award on the ground that "not all parties necessary for the resolution of the vacation pay dispute received notice of the NRAB proceedings as required by 45 U.S.C. Sec. 153 First (j)." 512 F.Supp. at 1086. That section requires that the Board give notice to "the carrier or carriers involved in any disputes submitted to [the Board]." Although the statute does not define the word "involved", we agree with those courts which have held that the only carriers who are "involved" are those who would be harmed or adversely affected by the outcome of the hearing. See, e.g., Brotherhood of Railway, Airline, and Steamship Clerks v. St. Louis Southwestern Ry. Co., 676 F.2d 132, 135 (5th Cir.1982); Hunter v. Atchison, T. & S.F. Ry. Co., 188 F.2d 294, 300-01 (7th Cir.), cert. denied, 342 U.S. 819, 72 S.Ct. 36, 96 L.Ed. 619 (1951); Estes v. Union Terminal Co., 89 F.2d 768, 770 (5th Cir.1937). Because we fail to see how any of the defendants in the 1979 action, other than the St. Johnsbury Railway, could have been harmed or adversely affected by the Board's 1977 order, we see no reason why the Board could not have decided the vacation pay issue as it did in 1977 without prior notice to those defendants, one of whom was not even in existence when the 1977 award was made.
 
 
 9
 As if the complications resulting from the district court's remand were not enough, the Board proceeded in its own way to muddy the waters more. Subdivision First (i) of 45 U.S.C. Sec. 153 provides that disputes between employees and carriers "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." The Board's own rules provide for submission by means of a joint statement of facts if possible, and, in the event of an inability to agree, "each party shall show separately the facts as they respectively believe them to be." 29 C.F.R. Sec. 301.5(c); see also Secs. 301.5(e), 301.7(b). Instead of complying with these well-defined rules, the Board, following remand by the district court, advised each of the newly notified parties that the hearing it intended to hold was "for the purpose of orally reviewing and arguing the evidence already presented" and that the Board was "not disposed to accept evidence not heretofore presented."
 
 
 10
 We believe that the Board's subsequent determination, based on evidence submitted in a prior proceeding in which none of the newly notified parties had been represented, was such an egregious failure to comply with the basic requirements of due process as to warrant judicial rejection of the result. See Union Pacific R. Co. v. Price, 360 U.S. 601, 616, 79 S.Ct. 1351, 1359, 3 L.Ed.2d 1460 (1959); Nord v. Griffin, 86 F.2d 481, 484 (7th Cir.1936), cert. denied, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879 (1937). Accordingly, if the Board had made an award against the St. Johnsbury Railroad, the Wabash Valley Railroad Company, the Lamoille Valley Railroad Company, or the State of Vermont, we would feel compelled to again remand the matter to the Board for a properly conducted hearing.
 
 
 11
 However, the Board did not make an award against any of these previously unnotified parties. The award in the second proceeding, as in the first, was against the St. Johnsbury Railway, "the railroad for whom the employees worked at the time the claim was made...." What brings the matter to this Court are the following words with which the Board completed the above quoted description: "as owned at the time by the State of Vermont." Although the district judge opined that "the NRAB appears to have taken pains to render the logic of and holding in its opinion as obscure as possible," he interpreted the opinion, as thus worded, to mean that "the carrier ordered to pay the claim was the State of Vermont." The State disagrees, and so do we.
 
 
 12
 The most obvious reason for our disagreement is the undisputed fact that the State of Vermont did not own the St. Johnsbury Railway. St. Johnsbury Railway was a private corporation whose stock was owned by four individuals, the principal shareholder being one Bruno Loati. The Board's award was made against the corporate carrier which Vermont did not own, not against the real property which the State did own.
 
 
 13
 If the Board wanted to make an award against the State of Vermont, it could have made its intentions clear in plain and unambiguous language. It appears that the Board deliberately avoided doing so. Perhaps this is because an award against the State would have run counter to a well-established I.C.C. policy of not imposing employee protection conditions in entire line abandonments, see Railway Labor Executives' Association v. I.C.C., 735 F.2d 691, 696 (2d Cir.1984), a policy of which the Board was fully aware. In its original opinion, the Board incorporated the following statement from the 1973 I.C.C. abandonment order in the instant case:
 
 
 14
 Labor representatives do not oppose the abandonment under the stipulation agreement and have made no request for conditions for protection of employees.
 
 
 15
 The sentences in the I.C.C. order which immediately follow the one above quoted read:
 
 
 16
 Ordinarily, the Commission does not impose conditions for the protection of employees where the entire line of railroad is abandoned. Texas Electric Ry. Co., Abandonment, 271 I.C.C. 391. Accordingly, no conditions for the protection of employees will be imposed.
 
 
 17
 The Commission could have added another sentence to those above quoted to the effect that, when an abandoned railroad is being acquired by a non-carrier, the responsibility for employment benefit payments rarely is imposed upon the acquiring entity. Matter of Chicago, M. St. P. & P.R. Co. v. Railway Labor Executives' Association, 658 F.2d 1149, 1168-71 (7th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Whether or not the State of Vermont became a carrier following its acquisition of the St. Johnsbury Railroad property, an issue concerning which the parties are in sharp dispute, it clearly was not a carrier prior to the acquisition. An award against Vermont in the instant case therefore would also run counter to the clearly-evidenced intent of Congress that States seeking to salvage the operation of abandoned rail lines not be burdened with the imposition of costly labor protection rules or orders. See Simmons v. I.C.C., 697 F.2d 326, 334-42 (D.C.Cir.1982).
 
 
 18
 Finally, assuming that, for some purposes at least, Vermont became a carrier following its acquisition of the St. Johnsbury Railroad property, the Brotherhood members never became employees of the State within the meaning of the Railway Labor Act. An "employee" under the Act must be a person "in the service of a carrier", i.e., "subject to its continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. Sec. 151 Fifth. As the Board quite properly found, the Brotherhood members were employed by the St. Johnsbury Railway.
 
 
 19
 The Railway Labor Act was enacted for the purpose of bringing about "stable relationships between labor and management" in the railroad industry. Brotherhood of Railroad Trainmen v. Chicago River & I.R. Co., 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). Section 3 of the Act, 45 U.S.C. Sec. 153, confers jurisdiction on the NRAB "to hold hearings, make findings, and enter awards in all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions....' " Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 240, 70 S.Ct. 577, 578, 94 L.Ed. 795 (1950). The Brotherhood, the nominal plaintiff for this action, was the certified representative of its members as employees of the St. Johnsbury Railway, and the "management" with whom it dealt in negotiations leading up to the Board submission was that of the St. Johnsbury Railway.
 
 
 20
 The district court should not have permitted itself to be led astray by the phrase "as owned at the time by the State of Vermont." It either should have treated the phrase as ambiguous and referred the matter back to the Board for clarification or held the phrase to be what it really is--a meaningless or legally insignificant addition to an otherwise valid award. For all the foregoing reasons, and because more than nine years have elapsed since this matter first was referred to the Board, we conclude that we should adopt the second alternative.
 
 
 21
 We remand the matter to the district court with instructions to disregard the meaningless "as owned by" phrase, to vacate the judgment against the State of Vermont, and to enforce the Board's award and enter judgment for the amount of the award against the St. Johnsbury Railway.[2] In all other respects the judgment of the district court is affirmed.
 
 
 
 [1]
 The St. Johnsbury Railway is referred to in the Board proceedings and in the caption of this action as the St. Johnsbury and Lamoille County Railroad, Inc. However, the district court's statement of agreed facts in the first proceeding before it gives the correct name as the St. Johnsbury and Lamoille County Railway, Inc. 512 F.Supp. 1079, 1081. The name "St. Johnsbury Railway" as used in this opinion refers to the entity described by the Board as the St. Johnsbury and Lamoille County Railroad, Inc., whatever its correct corporate name may be
 
 
 [2]
 See Footnote 1, supra